IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| SHANNON CARPENTER, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>MCDONALD'S CORPORATION,<br><br>Defendant. | Case No. 1:21-cv-02906<br><br>Judge Charles R. Norgle |

## ORDER

Plaintiff's motion to remand pursuant to 28 U.S.C. § 1447(c) [19] is granted. Plaintiff's claims under 740 ILCS 14/15(a) and 740 ILCS 14/15(c) are remanded to the Circuit Court of Cook County, Illinois. Plaintiff's response to Defendant's pending motion to dismiss [15] shall be filed by November 22, 2021. Defendant's reply shall be filed by December 6, 2021.

## MEMORANDUM OPINION

Shannon Carpenter ("Plaintiff") brought this putative class action against McDonald's Corporation ("McDonald's" or "Defendant") in the Circuit Court of Cook County, Illinois, claiming that McDonald's violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). According to Plaintiff, Defendant collects customers' voiceprint biometrics at some of its drive-through lanes at its franchises throughout the country and Illinois using an artificial intelligence voice assistant. Plaintiff asserts that Defendant has failed to comply with various BIPA regulations implicated by this practice, including regulations regarding informed consent, public disclosure of retention policies, and dissemination of information. After Defendant removed the case to this Court, Plaintiff filed the present motion to remand two of his four BIPA claims—Plaintiff's Section 15(a) and Section 15(c) claims—back to state court. Plaintiff argues that his allegations fail to plead a concrete injury-in-fact necessary to satisfy the

1

federal requirement for Article III standing for those claims. For the following reasons, the motion is granted, and those two claims are remanded to Illinois state court.

## I. STANDARD

As the party invoking federal jurisdiction, Defendant bears the burden of establishing Plaintiff's Article III standing. Collier v. SP Plus Corp., 889 F.3d 894, 896 (7th Cir. 2018). "[S]tanding requirements in Illinois courts are more lenient than those imposed by Article III." Bryant v. Compass Grp. USA, Inc., 958 F.3d 617, 622 (7th Cir. 2020). If a district court lacks subject matter jurisdiction over a removed case or claim, the only remedy is remand of the case or claim to state court, absent the application of supplemental jurisdiction. 28 U.S.C. § 1447(c); Bergquist v. Mann Bracken, LLP, 592 F.3d 816, 819 (7th Cir. 2010) ("If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest—unless the balance can be handled under the supplemental jurisdiction."); Colon v. Dynacast, LLC, No. 20-CV-3317, 2021 WL 492870, at *1 (N.D. Ill. Feb. 10, 2021) (severing Section 15(a) claim, remanding it to state court, and retaining jurisdiction over plaintiff's remaining BIPA claims). The Court "must resolve any doubts about jurisdiction in favor of remand." Colon, 2021 WL 492870 at *5; see also Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 758 (7th Cir. 2009).

Three requirements must be satisfied for Plaintiff to have Article III standing: (1) he must have suffered an actual or imminent, concrete and particularized injury-in-fact; (2) there must be a causal connection between his injury and the conduct complained of; and (3) there must be a likelihood that this injury will be redressed by a favorable decision. Bryant, 958 F.3d at 620-21. Only the first of those criteria is at issue here, as "any injury []he suffered was caused directly by [Defendant's] failure to comply with BIPA, and the prospect of statutory damages shows that such an injury is redressable." Id. The Supreme Court has explained that a "concrete" injury must

2

actually exist but need not be tangible. Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (the risk of real harm can suffice). Congress may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Id. But "Article III standing requires a concrete injury even in the context of a statutory violation" and "a bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement[.]" Id. A "particularized" injury is one that "affect[s] the plaintiff in a personal and individual way." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 n.1 (1992). A generalized grievance shared by all members of the public will not suffice. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342-44 (2006). Finally, the Court notes that even in the context of similar statutory violations, "allegations matter. One plaintiff may fail to allege a particularized harm to himself, while another may assert one." Thornley v. Clearview AI, Inc., 984 F.3d 1241, 1246 (7th Cir. 2021).

## II. DISCUSSION

Section 15 of BIPA establishes requirements for the collection, retention, disclosure, and destruction of biometric information. 740 ILCS 14/15(a)-(d). Plaintiff brings claims under all four subsections, but only Sections 15(a) and 15(c) are relevant to this motion, because Plaintiff does not move for remand of the other claims.[1] The Court will address Sections 15(a) and 15(c) in turn.

---

[1] Section 15(b) requires private entities to solicit informed consent from individuals whose information they obtain, and section 15(d) prohibits the disclosure or dissemination of a person's biometric information without their consent. 740 ILCS 14/15(b); 740 ILCS 14/15(d). The Court has no reason to doubt that it retains jurisdiction over these claims as alleged. Sections 15(b) and 15(d) are part of BIPA's informed-consent regime, and Plaintiff alleges he was never asked for nor gave any consent, which is a concrete and particularized injury. See Cothron v. White Castle Sys., Inc., 467 F. Supp. 3d 604, 613 (N.D. Ill. 2020) ("Section 15(d) requires entities to obtain a person's consent when disclosing or disseminating an individual's biometric data. Framed this way, Section 15(d) forms a piece of the 'informed-consent regime' at the heart of BIPA. Just as with h[is] Section 15(b) claim, the informational injury suffered by [Plaintiff] was concrete: the relevant information—that [Defendant] planned to disseminate [Plaintiff's] data to third parties—is personal and substantive and would have provided [Plaintiff] an opportunity to object to the way h[is] data was being handled or to opt out of the system entirely.").

3

A. Section 15(a) Claim

Section 15(a) requires that a "private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information [at a later time.]" 740 ILCS 14/15(a). In addition, "[a]bsent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines." Id.

Plaintiff cites to recent Seventh Circuit case law to support his motion to remand. First, he argues that his Section 15(a) claim must be remanded pursuant to Bryant v. Compass Group USA, Inc., 958 F.3d 617 (7th Cir. 2020), because he has not alleged a concrete, particularized injury. In that case, the Seventh Circuit held that a Section 15(a) claim is not a concrete and particularized injury when the plaintiff invokes only the public-disclosure provision of that section as opposed to the provision requiring private entities to comply with their own retention schedule and destruction guidelines. Id. at 626 ("Our analysis is thus limited to the theory she invoked."). "[T]he duty to disclose under Section 15(a) is owed to the public generally, not to particular persons whose biometric information the entity collects. This provision is not part of the informed-consent regime and [Plaintiff] alleges no particularized harm that resulted from [Defendant's] violation of section 15(a)." Id.

Defendant counters by arguing that Plaintiff's allegations are more like those in Fox v. Dakkota Integrated Sys., LLC, 980 F.3d 1146 (7th Cir. 2020). There, the Seventh Circuit clarified the "limited" holding of Bryant, finding that the District Court in Fox had mistakenly remanded the Section 15(a) claim to state court. Fox, 980 F.3d at 1148-49. Unlike Bryant, Fox did "not allege a mere procedural failure to publicly disclose a data-retention policy" but alleged that the

4

defendant violated "the full panoply of its section 15(a) duties—the duties to develop, publicly disclose, *and comply with* data retention and destruction policies—resulting in the wrongful retention of her biometric data[.]" Fox, 980 F.3d at 1149 (emphasis in original) (the plaintiff "alleges a concrete and particularized invasion of her privacy interest"). "The invasion of a legally protected privacy right, though intangible, is personal and real, not general and abstract." Id.

The question, therefore, is whether Plaintiff merely alleges Defendant's failure to disclose its policy, or alleges more—like unlawful retention. Fox, 980 F.3d at 1154 ("An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does . . . It follows that an unlawful *retention* of a person's biometric data is as concrete and particularized an injury as an unlawful *collection* of a person's biometric data.") (emphasis in original). According to Defendant, Plaintiff alleges unlawful retention, establishing Article III standing. See Kalb v. GardaWorld CashLink LLC, No. 1:21-CV-01092, 2021 WL 1668036, at *3 (C.D. Ill. Apr. 28, 2021) (finding the allegation that "Defendant does not have written, publicly available policies identifying their retention schedules, or guidelines for permanently destroying any of these biometric identifiers or biometric information" more like the allegation in Fox than that in Bryant, and denying remand). Plaintiff insists that he only asserts, as his complaint allegedly evinces, a Section 15(a) claim regarding Defendant's failure to disclose.

The Court agrees with Plaintiff that his Section 15(a) claim only alleges Defendant's failure to publicly disclose. Here, Plaintiff's complaint asserts only one count (for violation of BIPA) and at times makes allegations without explicitly referencing specific sections of BIPA. Dkt 1-1 ("Complaint"). When relevant to Section 15(a), Plaintiff's allegations focus on Defendant's failure to publicly disclose, stating: (1) "Nor does McDonald's have a publicly available data retention policy that discloses what McDonald's does with the voiceprint biometric data it obtains or how long it is stored for," (2) "Nor has Defendant made a policy regarding its

5

retention or deletion of the voiceprint biometric data that it obtains publicly available for Plaintiff and the other Class members to review," (3) "Defendant failed to provide a publicly available retention schedule[,]" and (4) "Defendant denied Plaintiff and the other Class members their rights to statutorily required information[.]" Compl. ¶¶ 22, 28, 44(e), 47. But never does the complaint allege that Defendant failed to have a retention policy or guidelines for destroying information, nor does the complaint allege that Defendant actually failed to comply with its own policies or guidelines. Put another way, taking all the facts in Plaintiff's complaint as true does not preclude the possibility that Defendant has complied with its own written policy that establishes a retention schedule and destruction guidelines. The closest Plaintiff comes to making such an assertion is in the Count I section of the complaint, when Plaintiff describes Section 15(a)'s requirement that private entities "adhere to the publicly posted retention and deletion schedule." Compl. ¶ 41. But that paragraph only describes Section 15(a)'s requirements without making a factual assertion about Defendant's practices.

Given the lack of any allegation regarding Defendant's failure to comply with a policy, rather than merely the duty to disclose, the Court rules in favor of Plaintiff on this issue. The Court's holding is further bolstered, though not controlled, by Plaintiff's insistence in his motion and reply that he only alleges a violation of Section 15(a)'s public disclosure provision. Colon v. Dynacast, LLC, No. 20-CV-3317, 2021 WL 492870, at *4 (N.D. Ill. Feb. 10, 2021) (despite the complaint being "arguably ambiguous as to whether it alleges a failure to comply with data policies or only a failure to disclose those policies," an interpretation supporting remand was "confirmed by Plaintiff: in her original and supplemental briefing, she has assured the Court that she bases her Section 15(a) claim on only a failure to publicly provide a data policy."). Plaintiff's Section 15(a) claims are like those in Bryant, so that claim is remanded to the Circuit Court of Cook County, Illinois. Id. (remanding Section 15(a) claim after discussing Fox and being "satisfied by

6

considering only the complaint"); Marquez v. Google LLC, No. 20-cv-4454, 2020 WL 6287408, at *2) (N.D. Ill. Oct. 27, 2020) (remanding where complaint omitted the portion of Section 15(a) addressing compliance).

### B. Section 15(c) Claim

Section 15(c) of BIPA states that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). It "addresses only the regulated entity . . . and flatly prohibits for-profit transactions." Thornley v. Clearview AI, Inc., 984 F.3d 1241, 1247 (7th Cir. 2021). Plaintiff argues that his Section 15(c) claim lacks standing pursuant to Thornley. The Court agrees and remands the claim.

In Thornley, the plaintiff only brought a single Section 15(c) claim on behalf of the following class: "All current Illinois citizens whose biometric identifiers or biometric information were [sic], without their knowledge, included in the Clearview AI Database at any time from January 1, 2016 to January 17, 2020 (the "Class Period") and *who suffered no injury from Defendant's violation of Section 15(c) of BIPA other than statutory aggrievement...*" Thornley v. Clearview AI, Inc., 984 F.3d 1241, 1246 (7th Cir. 2021) (emphasis added). The Seventh Circuit held that plaintiff's allegations failed to establish Article III standing, concluding that the plaintiffs "described only a general, regulatory violation, not something that is particularized to them and concrete." Id. at 1248. The Thornley court noted, however, that a Section 15(c) claim supported by different allegations might remain in federal court. For example, a plaintiff might assert "that by selling her data, the collector has deprived her of the opportunity to profit from her biometric information. Or a plaintiff could assert that the act of selling her data amplified the invasion of her privacy that occurred when the data was first collected, by disseminating it to some unspecified number of other people." Id. at 1247. However, the court remanded the case because it was left

7

not with allegations of concrete and particularized harm to the plaintiffs, but with "a general rule that prohibits the operation of a market in biometric identifiers and information." Id. ("[T]his is the same kind of general regulation as the duty to create and publish a retention and destruction schedule found in Section 15(a), at least when the plaintiff asserts no particularized injury resulting from the commercial transaction.").

Here, as relevant to Section 15(c), Plaintiff alleges that Defendant "profited from Plaintiff's biometrics" in Illinois. Compl. ¶ 13; see also id. ¶ 44(b) (voiceprint biometrics were "used"). Plaintiff states that "by using its voiceprint biometric-based AI voice assistant to collect food orders at its Illinois restaurant locations, Defendant profited from Plaintiff's and the other Class members' voiceprint biometric identifiers in violation of 740 ILCS 14/15(c)." Compl. ¶ 45.

Plaintiff's allegations are little, if any, more than a recitation of the general regulatory violation proscribed by Section 15(c). Perhaps the only way to allege less of a particularized injury under Section 15(c) would be to copy the Thornley plaintiffs and explicitly disavow any personal harm from Defendant's violation of that section. Defendant, however, argues that Plaintiff's failure to disavow any personal injury makes all the difference. For Defendant, this establishes Plaintiff's standing, given that Plaintiff "alleges . . . injuries . . . to [the class members'] right to biometric-information privacy." Dkt. 22 (Response) at 7. Defendant argues that Plaintiff's complaint, in contrast to the Thornley complaint, seeks to "obtain redress for all persons *injured* by Defendant's conduct." Compl. at 1 (emphasis added); see also Compl. ¶ 47 ("By . . . using . . . Plaintiff's and the other Class members' voiceprint biometrics as described herein, Defendant . . . violated their respective rights to biometric information privacy, as set forth in BIPA.").

The Court finds Defendant's arguments unconvincing. First, although the Seventh Circuit in Thornley made clear that an explicit disavowal of injury is sufficient to demonstrate a plaintiff's lack of standing, such a disavowal is not necessary to do so. Hazlitt v. Apple Inc., No. 3:20-CV-

8

421-NJR, 2021 WL 2414669, at *7 (S.D. Ill. June 14, 2021) (noting that "the Court of Appeals [in Thornley] did not find express disavowal of individual harm to be a requirement" and remanding Section 15(c) claim despite that plaintiffs alleged "incur[ing] injuries" and "imminent threats of serious harm"). Second, unlike in Thornley, Plaintiff here asserts multiple BIPA claims, not just a Section 15(c) claim. Plaintiff's use of the words "injured" or "rights to biometric information privacy," then, do not necessarily implicate the alleged violation of Section 15(c)'s proscription against for-profit transactions. But regardless, Plaintiff ultimately alleges a general regulatory violation and nothing close to the type of personal, individual harm that the Thornley court observed might confer Article III standing. Thornley, 984 F.3d at 1247 (hypothetical complaints might assert that plaintiff (1) can no longer profit from her biometric information, or (2) had her invasion of privacy amplified, or (3) had to pay more to use a company's service). In addition, like with Plaintiff's Section 15(a) claim, the Court's holding is bolstered by Plaintiff's insistence that he "seeks only statutory, rather than actual, damages for Defendant's alleged violation of Section 15(c)." Dkt. 19 at 6. The claim is remanded to the Circuit Court of Cook County, Illinois.

## III. CONCLUSION

In general, plaintiffs "may" take care "to steer clear of federal court." Thornley, 984 F.3d at 1248. As Plaintiff argues, his complaint does not adequately plead concrete, particularized harm from Defendant's alleged violations of Sections 15(a) and 15(c) of BIPA. Accordingly, Plaintiff lacks Article III standing to bring those claims and the Court does not have jurisdiction to hear them. Plaintiff's motion is granted and those claims are remanded to the Circuit Court of Cook County, Illinois.

IT IS SO ORDERED.

ENTER: *[signature]*
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 1, 2021