## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SHANNON CARPENTER, individually and on behalf of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 1:21-cv-02906 |
| v. | ) ) | Hon. Charles R. Norgle |
| MCDONALD'S CORPORATION, | ) ) | Magistrate Susan E. Cox |
| *Defendant.* | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

Plaintiff Shannon Carpenter, by his undersigned counsel, hereby responds to Defendant McDonald's Corporation's Motion to Dismiss (Dkt. 16) ("MTD") as follows:

I.      **INTRODUCTION**

As alleged in Plaintiff's Complaint, Defendant, one of the largest fast-food franchises in the world, implemented an AI voice assistant to automatically take customers' drive-through orders to reduce costs and staff. However, in order for Defendant's AI voice assistant to efficiently and effectively take customers' orders it relies on technology that extracts customers' voiceprint biometrics in order to understand their speech inputs. Defendant's Motion to Dismiss attempts to argue that Plaintiff fails to plead a BIPA violation because he does not allege that Defendant's AI voice assistant gathered any unique "identifying" information that could constitute a voiceprint biometric. In so arguing Defendant wholly ignores Plaintiff's well pled allegations that Defendant's AI voice assistant extracts exactly the type of unique "identifying" voiceprint data that BIPA seeks to protect including the speaker's pitch, volume, duration, age, gender, nationality, and national origin. Indeed, one can hardly think of a more comprehensive list of attributes that

would constitute "identifying" biometric information. Nor is there any validity to Defendant's base assertions that Plaintiff fails to allege "how, when, or any factual detail" as to how his biometrics were collected when Plaintiff goes so far as to allege the location of the exact McDonald's restaurant where Plaintiff visited and interacted with Defendant's AI voice assistant that extracted his voiceprint biometrics, as well as specific details about how Defendant's AI voice assistant operates.

In short, Plaintiff's well-pled allegations, which the Court must accept as true at the pleading stage, establish a claim under BIPA. To the extent that Defendant wishes to introduce any further facts regarding how its AI voice assistant operates and challenge Plaintiff's claims on the merits, it may do so at summary judgement after the Parties have had an opportunity to conduct the necessary discovery.

## II.    <u>BACKGROUND</u>

Defendant operates one of the largest fast-food companies in the world that operates thousands of restaurant locations through its franchisees. (Compl. at ¶ 15.) In 2019, in an effort to reduce staff and increase profits, Defendant acquired "Apprente," a company that specialized in developing AI voice assistants, to implement an AI voice assistant for its restaurants. (*Id.* at ¶¶ 16–17.) Critically, Defendant's AI voice assistant operates by extracting the customer's voiceprint biometrics to determine unique features of their voice such as the pitch, volume, and duration, as well as identifying information from within the voiceprint such as their age, gender, nationality, and national origin. (*Id.* at ¶ 19.) Furthermore, Defendant implemented its AI voice assistant in conjunction with other AI technologies, including automatic license plate scanning technology, so that its AI voice assistant would be able to identify unique customers regardless of which location they visit and present them with tailored menu options. (*Id.* at ¶ 20.) However, while Defendant

has implemented its AI voice assistant in restaurant locations throughout Illinois, Defendant fails to obtain valid consent from its customers before they interact with it and have their voiceprint biometrics collected. (Compl. at ¶ 21.) Nor does Defendant have a publicly available data retention policy regarding the voiceprint biometrics its AI voice assistant gathers. (*Id.* at ¶ 22.)

Plaintiff was subject to Defendant's unlawful conduct when in 2020 he visited one of Defendant's restaurants in Lombard, Illinois, and interacted with Defendant's AI voice assistant at the restaurant's drive through. (*Id.* at ¶ 23.) Plaintiff knew that he was interacting with Defendant's AI voice assistant when it asked him for his order, which he provided. (*Id.* at ¶¶ 24–25.) In order to understand Plaintiff's order and provide verbal confirmation of it at the end of the exchange, Defendant's AI voice assistant extracted his voiceprint biometrics. (*Id.* at ¶ 27.) However, Plaintiff never provided any form of consent permitting Defendant to capture, store, or disseminate his voiceprint biometrics, as required by Section 15(b) and Section 15(d) of BIPA. (*Id.* at ¶ 27.)[1]

## III.  <u>LEGAL STANDARD</u>

Where a defendant moves to dismiss a complaint under Federal Rule 12(b)(6), the motion does not test the merits of the plaintiff's claims; rather it "tests only the legal sufficiency of the complaint." *Hanley v. Green Tree Serv., LLC*, 934 F. Supp. 2d 997, 980 (N.D. Ill. 2013) (citing *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990)). When considering a Rule 12(b)(6) motion, the court must construe the complaint "in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the plaintiff's] favor." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.*, 657 F.3d 496, 502 (7th Cir. 2011).

---

[1] Plaintiff's Complaint asserts claims under 740 ILCS 14/15(a), 15(b), 15(c), and 15(d). On November 1, 2021, the Court granted Plaintiff's Motion to Remand and severed and remanded Plaintiff's Section 15(a) and 15(c) claims to state court. (Dkt. 25).

A complaint will survive a Rule 12(b)(6) motion as long as it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief." *Supreme Auto Transport v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1036 (N.D. Ill. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007)).

## IV.    ARGUMENT

### A.    Plaintiff Plainly Alleges That Defendant Collected His Voiceprint Biometrics.

Defendant discusses at length that a "voiceprint" under BIPA "refer[s] to the measurement and analysis of a unique physical or behavioral characteristic that identifies a person, such as a fingerprint or voice pattern." (Motion to Dismiss at 5–6.) Defendant further elaborates that BIPA is only applicable to the collection of "any information that could be *used to identify an individual*, such as biological characteristics, or distinctive patterns of curved lines and whorls used to measure human vocal sounds." (*Id.* at 7–8.) In so arguing, Defendant actually directly supports Plaintiff's allegations. Plaintiff alleges that Defendant did in in fact analyze unique "physical" and "biological characteristics" of Plaintiff's voice when its AI voice assistant determined the "pitch," "volume," and "duration" of his voice, as well as Plaintiff's "gender" and "age." (Compl. at ¶ 19.) Furthermore, Plaintiff's Complaint also alleges that Defendant's AI voice assistant gathers "identifying information" including "nationality," "accent," "age," "gender," and "national origin." (*Id.*) It is hard to imagine what further "identifying information" one could even gather from an individual's voiceprint.

4

Defendant's attempt to further controvert Plaintiff's claims by challenging one of the patents cited in the Complaint also fails to support its position. While Defendant claims that the uniquely identifying data points described in the patent is only "training data" that is used "for training" Defendant's AI voice assistant (MTD at 7), Defendant ignores the basic and indisputable conclusion that the patent describes how the AI voice assistant is trained to collect and utilize the unique biometric data points described therein. If the AI voice assistant is trained to recognize "accents, speech patterns, speed of speech" and "gender, age, nationality, geographic region" (Ex. A, Dkt. No. 16-1, at 12), then it necessarily must be able to extract those data points from vocal speech inputs from Defendant's restaurant customers. Indeed, the patent explains as much. For example, the patent describes that if the AI voice assistant "is to be trained for use in a drive through restaurant" then "an i-vector may be generated that is representative of speakers from [a particular] geographic location" which will "*train*" that AI voice assistant "to determine the intent for speakers of that particular geographic area." (*Id.* at 12) (emphasis added). Similarly, the patent describes "train[ing]" the "machine learning model" to "determine a particular characteristic or set of characteristics of a speaker[.]" (*Id.* at 14.) The patent explains this most plainly when it describes the AI voice assistant as a "conversational agent" that utilizes an "acoustic model . . . trained to receive an input comprising acoustic features from an *audio waveform*[2] that represents an utterance of a speaker and to output a sequence of phonemes" as well as "output sequences of non-phonemic or prosodic features" such as "pitch, volume, duration, and so on." (*Id.* at 6.) (emphasis added). Thus the patent directly supports Plaintiff's allegations. Defendant's AI voice assistant is trained

---

[2] As its name implies, an "audio waveform" is a graphical representation, measurement, or illustration of acoustic patterns—precisely, as Defendant points out, what constitutes the common understanding of a voiceprint. *See* Public Access Opinion No. 17-011, Office of the Attorney General, 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) (describing voiceprints as "a record of mechanical measurement" as opposed to a mere audio recording).

to convert speech into an "audio waveform" from which it extracts the "pitch, volume, duration, and so on" of the speaker. It is hard to imagine a clearer description of a system that extracts a voiceprint biometric. Defendant's focus on the fact that the patent describes how the AI voice assistant is trained entirely fails to recognize that the AI voice assistant is being trained to extract customers' voiceprint biometrics so that it is able to analyze and recognize unique vocal features that allow it to more accurately understand orders.

### B. Plaintiff's Complaint Pleads Defendant's BIPA Violations In Exacting Detail.

Defendant's argument that "Plaintiff also fails to adequately allege "how, when, or any factual detail" about its alleged BIPA violations makes little sense in light of Plaintiff's detailed allegations. (MTD at 9.) First, Plaintiff's Complaint alleges in detail, with citations to one of the patents underlying Defendant's AI voice assistant technology, that Defendant developed an AI voice assistant that operates by capturing voiceprint biometrics. (Compl. at ¶¶ 16–20.) Then, Plaintiff describes in detail how he visited a McDonald's restaurant in Lombard, Illinois, went through Defendant's drive-through, and interacted with its AI voice assistant which extracted his voiceprint biometrics in order to complete his order. (*Id.* at ¶¶ 23–26.) Finally, Plaintiff pleads that Defendant: (1) failed to obtain his written consent to have his voiceprint biometrics collected; (2) did not make a policy regarding its retention and deletion practices for the voiceprint biometrics it gathered publicly available; and (3) profited from his voiceprint biometrics. (*Id.* at ¶¶ 27–28, 44–45.) As such, Plaintiff plainly explains "the wrongful steps that [Defendant] took before or after it came into 'possession' of the biometric information." (MTD at 8.)

Nor are there any grounds for Defendant's brief and largely unsupported argument that Plaintiff had to allege that Defendant's AI voice assistant actually *used* his voiceprint biometrics to "verify his identity" or that Plaintiff's Complaint should be dismissed because "[a]t most,

Plaintiff alleges that he participated in an anonymous interaction with the voice assistant to place his order." (MTD at 9.) Defendant's argument conflates and makes redundant BIPA's statutory language which specifically distinguishes between "biometric identifier[s]" such as a "voiceprint" and "biometric information" which is "any information . . . based on an individual's biometric identifier" that is actually "*used to identify an individual*." 740 ILCS 14/10 (emphasis added). As the court in *Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738 (S.D. Ill. 2020) explained, "[t]he word 'identifier' modifies the word 'biometric' to signal that the types of data listed *could* be used to identify a person." *Hazlitt*, 500 F. Supp. 3d at 749 (emphasis in original). Indeed, the court in *Rivera* which Defendant itself cites to for support, stated that "biometric identifier" means "a biology-based set of measurements ('biometric') that *can* be used to identify a person ('identifier')." *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (emphasis added). The court in *Vance v. Int'l Bus. Machines Corp.*, No. 20-cv-577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020) similarly found that the fact that the defendant's "dataset" of "biometric measurements that *can* be used to identify Plaintiffs" was sufficient to "implicate BIPA" even if it was not actually used to identify them. 2020 WL 5530134, at *5 (emphasis added). Thus Defendant's assertion that Plaintiff engaged in an "anonymous interaction" with its AI voice assistant is entirely irrelevant to his allegation that "Defendant's AI voice assistant extracted *Plaintiff's* voiceprint biometrics" that were unique to him and that *could* be used to identify him. (Compl. at ¶ 26) (emphasis added). In any event, Plaintiff also alleges that Defendant is using its biometric voice recognition technology in concert with license plate scanners in order to identify particular customers. (*Id.* at ¶ 20.)

Finally, even though Defendant concedes that its AI voice assistant is capturing "speaker characteristics," it confusingly argues that Plaintiff's Complaint "does not allege that he provided

information that would identify him as the speaker." (MTD at 9.) That contention is simply nonsensical considering that Plaintiff directly alleges that Defendant collected his "voiceprint" "biometric identifiers" which BIPA defines as those biological measurements that are inherently unique to an individual and cannot be changed. Compl. at ¶ 42; 740 ILCS 14/5. For that reason, Plaintiff is not required to separately and redundantly allege that his "voiceprint" was unique to him and could identify him. (MTD at 3.) This is especially the case in light of the supporting allegations that Defendant's AI voice assistant extracts and records unique physical characteristics of the speaker's voice such as "pitch," "volume," and "duration," as well as unique identifying information such as "gender," "age," "nationality," "accent," and "national origin. (Compl. at ¶ 19.)

In short, Plaintiff's clear, supported, and well-pled allegations that Defendant's AI voice assistant captured and stored his "voiceprint" "biometric identifiers" are more than sufficient to state claims against Defendant under BIPA, and Defendant's motion to dismiss should therefore be denied.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order denying Defendant's Motion to Dismiss in its entirety, and granting such further relief as the Court deems reasonable and just.[3]

---

[3] Should the Court grant Defendant's Motion in whole or in part, Plaintiff requests that any such dismissal be made without prejudice to provide Plaintiff the opportunity to correct any curable defects, as it is well established that a cause of action should not be dismissed with prejudice unless it is clear that no set of facts can be proved under the pleadings which would entitle a plaintiff to relief. *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008) (citing *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 584–85, (2003)).

Dated: November 22, 2021                  Respectfully submitted,

                                         SHANNON CARPENTER, individually and
on behalf of similarly situated individuals

By:   /s/ Eugene Y. Turin
*One of Plaintiff's Attorneys*

Eugene Y. Turin
Timothy P. Kingsbury
Colin P. Buscarini
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
eturin@mcgpc.com
tkingsbury@mcgpc.com
cbuscarini@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 22, 2021, I filed the foregoing *Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss* using the Court's CM/ECF Filing System. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Eugene Y. Turin