THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHANNON CARPENTER, *individually and on behalf of all similarly situated individuals*, <br><br> Plaintiff, <br><br> v. <br><br> MCDONALD'S CORPORATION, <br><br> Defendant. | Case No. 21-cv-02906 <br><br> Hon. Charles R. Norgle, Sr. <br><br> Magistrate Susan E. Cox |

## MCDONALD'S CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

None of the allegations Plaintiff points to in his opposition—nor any other in the Complaint—supports the claim that the voice assistant collects a voiceprint or any information subject to BIPA. Plaintiff attempts to sidestep these deficiencies by arguing that he alleges the voice assistant "extracts," from a drive-thru order, "pitch, volume, duration," and a customer's "age, gender, accent, nationality, and national origin." Even assuming these allegations were true, such a claim would not implicate BIPA because those "attributes" are not a biometric identifier. In any event, Plaintiff has alleged no facts that plausibly support his faulty premise that McDonald's voice assistant is trained to recognize accents, speech patterns, speed of speech, gender, age, nationality, and geographic region, nor the false conclusion (based on that faulty premise) that the voice assistant necessarily must extract this data from customers. Indeed, the patent Plaintiff attaches to his Complaint and discusses at length in his opposition simply describes training a conversational agent to recognize a speaker's "intent," like "[order]," and "[hamburger]," in order to perform the corresponding operations, such as ordering a hamburger. Plaintiff's opposition then points to conclusory allegations that do not (and cannot) plausibly and

sufficiently assert any BIPA violation.

I.     **PLAINTIFF'S OPPOSITION CONFIRMS BIPA DOES NOT APPLY TO HIS CLAIMS.**

    A.     **Plaintiff Has Not Alleged Any "Biometric Identifier" or "Biometric Information."**

In its opening brief, McDonald's showed that Plaintiff's allegations do not implicate BIPA because he did not allege any facts to support the claim that his voiceprint (a biometric identifier) was used, or that any information "based on [his] biometric identifier" was "used to identify" him (biometric information). 740 ILCS 14/10. In response, Plaintiff argues that he alleged McDonald's analyzed "physical and biological characteristics" of his voice when the voice assistant determined the pitch, volume, and duration of his voice, as well as Plaintiff's gender and age. ECF No. 27, at 4; *see also* ECF No. 1-1, ¶ 19. He further argues that he alleged the voice assistant gathers "identifying information," including nationality, accent, age, gender, and national origin. ECF No. 27, at 4.

These "physical and biological characteristics" are not the biometric data governed by BIPA. The Act defines "biometric identifier" to "mean" an exhaustive list of specific, covered biometric identifiers that includes "voiceprint." 740 ILCS 14/10. The Act then defines "biometric information" by referring back to "biometric identifier." So, without a voiceprint here, there is no data subject to BIPA. And Plaintiff has not alleged facts to support any claim of a "voiceprint" because he does not allege McDonald's took a graphical representation of his voice and identified him as speaking to the voice assistant. *Voiceprint*, Black's Law Dictionary (11th ed. 2019) (A "voiceprint" is defined as "[a] distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker."); Public Access Opinion No. 17-011, Office of the Attorney General, 2017 WL 10084298, at *3 (Ill. A.G. Aug. 14, 2017) (explaining that a voiceprint "measures human vocal sounds for the purpose of

identifying an individual speaker").

## B. Plaintiff Does Not Plausibly Allege That the Voice Assistant Collects the "Characteristics."

Not only are the "characteristics" allegedly obtained not subject to BIPA, Plaintiff also provides no factual allegations in his Complaint or opposition to plausibly allege the voice assistant collects "characteristics" such as pitch, volume, or duration. *See, e.g.*, *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 964 (N.D. Ill. 2020) (recognizing that "facial plausibility" to survive dismissal requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Indeed, the '299 Patent[1] does not describe, or even plausibly suggest, a voice assistant that "necessarily must be able to extract those data points from vocal speech inputs from Defendant's restaurant customers." ECF No. 27 at 5. Instead, as detailed in McDonald's opening brief, the patent simply describes training a conversational agent to recognize a speaker's "intent." ECF No. 16, at 2–3. When a customer speaks, the agent represents the words as a sequence of phonemes, and then processes those phonemes into transcodes that represent the speaker's intent, like "[order]," and "[hamburger]." *See id.* Business logic receives the sequence of transcodes and performs the corresponding operations—such as adding a hamburger to an order—in accordance with the speaker's intent. *See id.*

The '299 Patent explains that the agent may be trained to better recognize a speaker's intent through the use of synthetic (i.e., artificial) data. *See id.* at 7. In describing the different methods of training available, the '299 Patent describes modifying synthetic data to include an "i-vector," which is generated by a separate machine learning model, to aid in producing training data items that are representative of speakers from a geographic location. *See id.*; ECF No. 16-1, Ex. A at

---

[1] *See* ECF No. 1-1, ¶ 19 n.2 (U.S. Pat. No. 10,559,299 ("the '299 Patent")).

3

12. Plaintiff's opposition conflates these points to argue that McDonald's voice assistant is trained to recognize accents, speech patterns, speed of speech, and gender, age, nationality, and geographic region. But there are no facts that plausibly support the assertion that the voice assistant is trained to recognize these attributes because the patent on which Plaintiff relies simply describes training a conversational agent to determine *intent* for speakers who display those representative characteristics (e.g., accents, speech patterns, etc.).

Again without any factual support, Plaintiff then posits that, if the voice assistant is trained to recognize accents, speech patterns, speed of speech, gender, age, nationality, and geographic region, then it "necessarily must be able to extract those data points from vocal speech inputs from Defendant's restaurant customers." ECF No. 16 at 5. But just as the '299 Patent does not disclose training the agent to recognize these characteristics, the '299 Patent does not disclose extracting any characteristics of a speaker in order to produce transcodes that represent the speaker's intent, such as "[order]" or "[hamburger]." The '299 Patent only describes training a conversational agent to recognize a speaker's "intent." *See, e.g.,* ECF No. 16-1, Ex. A at 12 ("train the transcoder or NLU 120 to determine *intent* for speakers of that particular geographic area" (emphasis added)).

Plaintiff has not pointed to anything in the '299 Patent (because there is nothing) that describes a means of identifying individual speakers at the drive-thru. This is not surprising, as the express purpose of the agent, and any training, is to determine the speaker's intent—not to identify individuals. Indeed, Plaintiff's opposition admits the same: Plaintiff complains that the voice assistant is trained "to analyze and recognize unique vocal features *that allow it to more accurately understand orders*." ECF No. 27, at 6 (emphasis added). Plaintiff continues to concede as much throughout his opposition. *See id.* at 1 (asserting that the assistant functions "to understand [customers'] speech inputs"); *id.* at 3 (describing the assistant as "extracting" data "to

4

understand Plaintiff's order and provide verbal confirmation of it at the end of the exchange"); *id.* at 6 (maintaining that the assistant "extracted" data from Plaintiff "in order to complete his order"). There is simply no factual support anywhere in the '299 Patent (or elsewhere in the Complaint) for the claim that the voice assistant extracts speaker characteristics, much less a voiceprint, or data based on a voiceprint used to identify an individual.

      **C.    The '299 Patent's Reference to an "Audio Waveform" Does Not Support Plaintiff's Claim That the Voice Assistant Uses Voiceprints.**

Next, Plaintiff relies on the '299 Patent's explanation that a conversational agent receives an input from an "audio waveform that represents an utterance of a speaker" to argue that audio waveform must be a voiceprint. But there is no support for that conclusion, which would require facts demonstrating that the audio waveform was "made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker." *See* Public Access Opinion No. 17-011, 2017 WL 10084298, at *3 (defining "voiceprint"). Plaintiff goes on to argue that an acoustic model may optionally "output sequences of non-phonemic or prosodic features" such as "pitch, volume, duration, and so on." ECF No. 27, at 5. But there is no factual support that McDonald's voice assistant performs this optional function, or that this function is geared toward identifying any individual speaker. Even if the voice assistant did perform this optional function, these features are not biometric identifiers, such as a voiceprint. *See supra* at 2.

**II.    PLAINTIFF HAS NOT IDENTIFIED ANY NON-CONCLUSORY FACTUAL ALLEGATIONS THAT STATE A PLAUSIBLE CLAIM UNDER BIPA.**

Plaintiff fails to identify any non-conclusory allegations that the voice assistant collected or disseminated his "biometric identifier" or "biometric information." Plaintiff points to three areas in the Complaint to argue that he provided sufficient factual allegations of a BIPA violation, but none is sufficient. First, he points to Paragraphs 16 through 20, and the patent he attached to the Complaint, to argue that he stated enough to allege the voice assistant captured "voiceprint

5

biometrics." To begin, "voiceprint biometrics"—a term that appears nowhere in the statute—is not a "biometric identifier" or "biometric information." Moreover, Paragraphs 16 through 18 provide no factual allegations that would support the inference that a voiceprint (biometric identifier), or information based on a voiceprint and used to identify an individual (biometric information), was collected. Those paragraphs simply allege how and why McDonald's allegedly purchased a technology company to implement a voice assistant at its restaurants. *See* ECF No. 1-1, ¶¶ 16–18. Paragraph 19 alleges, in conclusory fashion, that the voice assistant "extracts the customer's voiceprint biometrics to determine such unique features of the customer's voice as pitch, volume, duration, as well as to obtain identifying information such as the customer's age, gender, accent, nationality, and national origin." *Id.* ¶ 19. But, as discussed *supra* at 2, these "features" do not meet the definition of a biometric identifier because the Act defines "biometric identifier" with the complete set of specific qualifying biometric identifiers, and none of these speech characteristics constitutes a "voiceprint." 740 ILCS 14/10. Nor does Plaintiff's reference to the patent help here, because, as explained above, the '299 Patent does not identify any way in which the voice assistant extracts any biometric identifier or biometric information.

Paragraph 20 goes on to assert—without alleging any personal knowledge, and based on an unsourced article—that "McDonald's AI voice assistant goes beyond real-time voiceprint analysis and recognition and also incorporates 'machine-learning routines' that utilize voiceprint recognition in combination with license plate scanning technology to identify unique customers regardless of which location they visit and present them certain menu items based on their past visits." *See* ECF No. 1-1, ¶ 20. As an initial matter, Plaintiff does not even attempt to state any facts or knowledge of the operation of McDonald's voice assistant, or to tie any of these allegations to the restaurant that he allegedly visited. And his attempt to couple the alleged data with another

6

source (e.g., license plates) reflects the problem with his claims: the complained-of information, without more, *cannot* identify a specific individual. As a result, it cannot qualify as a voiceprint.

Second, Plaintiff points to Paragraphs 23 through 26, which—other than the passing reference to the term "voiceprint biometrics"—simply describe Plaintiff's interaction with the voice assistant, in which the voice assistant understood and processed his order. *Id.* ¶¶ 23–26. Again, nothing here supports the claim that a voiceprint, or information based on a voiceprint, was collected.

Third, Plaintiff points to Paragraphs 27, 28, 44, and 45 in response to McDonald's assertion that he did not allege any factual allegations to support that McDonald's took any wrongful steps before or after it came into possession of any alleged biometric information. But these paragraphs are nothing more than a recitation of the general regulatory requirements. *See id.* ¶¶ 27–28, 44–45. And Paragraphs 27 and 45 seem to relate to claims Plaintiff asked the Court to remand. *See id.* ¶¶ 27, 45.

Notably, Plaintiff does not attempt to defend the sufficiency of his allegations as to section 15(d)—one of the two remaining claims before this Court. Plaintiff fails to address his allegations as to section 15(d) entirely—and with good reason, as they amount to isolated, one-line recitations of the statute. *See id.* ¶ 47 (alleging that McDonald's violated BIPA "[b]y capturing, collecting, storing, using, and disseminating Plaintiff's and the other Class members' voiceprint biometrics as described herein," but providing no description of dissemination); *id.* ¶ 44 ("Defendant failed to obtain informed consent to disclose or disseminate the Class members' voiceprint biometrics for purposes of data retention and storage of the same, as required by 740 ILCS 14/15(d)(1)."). Such allegations are plainly insufficient, and Plaintiff's failure to defend them provides an additional basis for dismissal of the section 15(d) claim. *See, e.g.*, *Namuwonge v. Kronos, Inc.*,

7

418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (dismissing a section 15(d) claim where the plaintiff "pleaded on information and belief that . . . [the defendant] disclosed her fingerprints to other third parties that host the data," "alleged that . . . 'employees have no idea whether any [d]efendant sells, discloses, re-discloses, or otherwise disseminates their biometric data,'" and "did not allege other specifics related to any disclosure by [the defendant] to a third party," and reasoning that "such speculative allegations" could not survive); *Streeter v. Semtech Corp.*, No. 16-cv-4314, 2016 WL 6395573, at *3 (N.D. Ill. Oct. 28, 2016) (dismissing a claim with prejudice where it "contain[ed] mere conclusory statements without any supporting factual contention," and the plaintiff "present[ed] no argument in his [r]esponse brief that [the claim] adequately [pleaded] a claim"); *Thomas v. Urb. P'ship Bank*, No. 12 C 6257, 2013 WL 1788522, at *13 (N.D. Ill. Apr. 26, 2013) ("Claims that a plaintiff fails to defend in opposing a Rule 12(b)(6) motion are deemed abandoned and thus are dismissed with prejudice."); *see also Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019) ("[E]ven a complaint that passes muster under the liberal notice pleading requirements of . . . Rule . . . 8(a)(2) can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy of the complaint.").

Acknowledging that he fails to allege any fact to support a claim that the voice assistant identifies users, Plaintiff contends that he did not need to allege that a "voiceprint" was used to identify him, arguing that only biometric information, and not biometric identifiers, need to identify. But the only authority Plaintiff cites in his entire opposition for the definition of "voiceprint" is the one supplied by the Illinois Office of the Attorney General ("OAG") in Public Access Opinion No. 17-011, which explains that a voiceprint "measures human vocal sounds *for the purpose of identifying* an individual speaker." *See* ECF No. 27, at 5 n.2; Public Access Opinion No. 17-011, 2017 WL 10084298, at *3 (emphases added and omitted). More broadly, the OAG

interprets "biometric identifier" as "refer[ring] to the measurement and analysis of a unique physical or behavioral characteristic *that identifies a person*, such as a fingerprint or voice pattern." *Id.* (emphases added and omitted) (quoting Public Access Opinion No. 14-008, Office of the Attorney General, 2014 WL 4407615, at *2 (Ill. A.G. Aug. 19, 2014)). Identification is therefore not optional—it is fundamental to what constitutes a "voiceprint."

Plaintiff's citations to *Rivera*, *Vance*, and *Hazlitt* do not support his arguments. All three cases involved alleged facial scans—not voiceprints. And *Rivera* explains that "the things on the list of biometric identifiers are just that—specific, biology-based measurements *used to identify* a person, without reference to how the measurements were taken." *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1097 (N.D. Ill. 2017) (emphasis added). *Rivera* reiterates: "The bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) *used to identify* a person." *Id.* at 1986 (emphasis added). *Vance*, in turn, quotes *Rivera* for the same "bottom line" that biometric identifiers are measurements "*used to identify* a person," and for the description of "creating a set of biology-based measurements ('biometric') that *is used to identify* a person ('identifier')." *See Vance v. Int'l Bus. Machs. Corp.*, No. 20 C 577, 2020 WL 5530134, at *4 (N.D. Ill. Sept. 15, 2020) (emphases added). In *Hazlitt*, a court in the Southern District of Illinois allowed the claimed "face scans" to survive as potential "biometric identifiers," in part by crediting allegations "within the [c]omplaint . . . that the Photos app [actually] applies an algorithm *to identify* the device user." *See Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738, 749 (S.D. Ill. 2020) (emphasis added), *vacated sub nom In re Apple Inc.*, No. 20-8033, 2021 WL 2451296 (7th Cir. 2021), *remanded to* 2021 WL 2414669 (S.D. Ill. June 14, 2021) (adopting and incorporating, in relevant part, the prior analysis and conclusion). Plaintiff does not cite a case in

which a court allowed conclusory recitation of the term "voiceprint" to proceed past dismissal where there was no alleged identification.

## CONCLUSION

For these reasons, and because re-pleading will not cure the defects in Plaintiff's Complaint, McDonald's respectfully requests this Court dismiss Plaintiff's Complaint with prejudice.

Dated: December 6, 2021

Respectfully submitted,

s/ Efrat R. Schulman
Michael J. Gray
mjgray@jonesday.com
Efrat R. Schulman
eschulman@jonesday.com
Thomas W. Ritchie
twritchie@jonesday.com
Jennifer W. Plagman
jplagman@jonesday.com
Katherine S. Bailey
kbailey@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
Telephone: (312) 782-3939

*Attorneys for Defendant McDonald's Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on December 6, 2021, a copy of the foregoing was filed via the Court's CM/ECF document filing system, which will provide notice to the counsel of record.

                                                              s/ Katherine S. Bailey
                                                       *Counsel for McDonald's Corporation*