IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shannon Carpenter,<br><br>       Plaintiff,<br><br>  v.<br><br>McDonald's Corporation,<br><br>       Defendant. | Case No. 1:21-cv-02906<br><br>Honorable John Robert Blakey |

**MEMORANDUM OF LAW IN SUPPORT OF MCDONALD'S
CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I. BACKGROUND FACTS ........................................................................................... 2

II. ARGUMENT ............................................................................................................ 4

    A. Carpenter Has Not Met His Burden of Showing a "Voiceprint." ....................... 5

        1. The Voice Agent Operates As A *Speech* Recognition System, Not A *Speaker* Recognition System. ................................................................ 8

        2. The Voice Agent Does Not Produce "A Distinctive Pattern Of Curved Lines And Whorls . . . For The Purpose Of Identifying An Individual Speaker." ............................................................................ 9

        3. The Voice Agent Does Not Produce An Equivalent To A Voiceprint. ................................................................................................ 9

    B. Carpenter Has Not Met His Burden of Showing a Voiceprint Was Captured or Collected. ...................................................................................... 10

        1. The Voice Agent Does Not Retain Any Speech Features Created During An Interaction. ............................................................................. 11

        2. Plaintiff's Attempt To Combine Voice Agent Data With Other Sources Does Not Show McDonald's Captured, Collected or Otherwise Obtained a Voiceprint ............................................................ 12

    C. Plaintiff Consented to Interacting with the Voice Agent ................................... 13

    D. Plaintiff is Not Entitled to Statutory Damages Because He Has Not Shown That McDonald's Negligently, Intentionally, or Recklessly Violated BIPA. .............................................................................................................. 14

III. CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)............................................................................................................4

*Barnett v. Apple Inc.,*
2022 IL App (1st) 220187 (Dec. 23, 2022) ......................................................................11

*Gorny v. Wayfair, Inc.,*
No. 18 C 8259, 2019 WL 2409595 (N.D. Ill. June 7, 2019) ............................................14

*Cothron v. White Castle Sys., Inc.,*
2023 IL 128004..................................................................................................................11

*McGoveran v. Amazon Web Servs., Inc.,*
488 F. Supp. 3d 714 (S.D. Ill. 2020)...................................................................................7

*McGoveran v. Amazon Web Servs., Inc.,*
No. 1:20-CV-01399-SB, 2023 WL 2683553 (D. Del. Mar. 29, 2023).............................10

*People v. Casler,*
2020 IL 125117E.3d 767, 774 .............................................................................................6

*Rivera v. Google, Inc.,*
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................................................................... passim

*Rosenbach v. Six Flags Ent. Corp.,*
2019 IL 123186, 129 N.E.3d 1197 ...................................................................................6, 7

*Siegel v. Shell Oil Co.,*
612 F.3d 932 (7th Cir. 2010) ...............................................................................................4

*State Auto. Mut. Ins. Co. v. Tony's Finer Foods Enters., Inc.,*
589 F. Supp. 3d 919 (N.D. Ill. 2022) ..................................................................................5

*Tims v. Black Horse Carriers, Inc.,*
2023 IL 127801................................................................................................................7, 14

*W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.,*
2021 IL 125978, 183 N.E.3d 47 ..........................................................................................6

*Weaver v. Champion Petfoods USA Inc.*,
   3 F.4th 927 (7th Cir. 2021) ...................................................................................4

*Wells v. IFR Eng'g Co.*,
   247 Ill. App. 3d 43 (1993) ....................................................................................15

**STATUTES**

Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, et seq ................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ...................................................................................................4

Office of the Attorney General, in Binding Opinion 14-008 ...........................................7

Public Access Opinion No. 17-011 ...............................................................................7

*Voiceprint*, BLACK'S LAW DICTIONARY (11th ed. 2019) ...............................................7, 9, 14

Webster's Third New International Dictionary 444 (1993) ............................................10

## MEMORANDUM OF LAW

Plaintiff claims that a speech recognition system designed to recognize the *content* of speech (and not to identify the speaker based on that speech or any biometric identifier) violates the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, et seq. ("BIPA"). But, as the parties now agree, McDonald's did not identify Plaintiff when he visited the drive-thru at the McDonald's restaurant in Lombard, Illinois and placed his order through the technology for automating orders at the drive-thru ("Voice Agent"). The Voice Agent performed speech recognition to determine what Plaintiff ordered from the menu. Plaintiff *concedes* the Voice Agent did not ask for his name, birthdate or any identifying information and that the Voice Agent *did not say* anything that led him to believe that it knew who Plaintiff was. Plaintiff is unable to identify his alleged biometrics among the discovery produced. Instead, Plaintiff's claims against McDonald's are an effort to expand the reach of BIPA beyond the biometric identifiers and biometric information that the Illinois General Assembly intended to protect and—through the threat of prohibitive damages—put an end to the use of *any* voice technology in Illinois. Those arguments find no support in BIPA's language or legislative intent.

Plaintiff's claims fail for three additional independent reasons. For one, McDonald's did not "collect, capture, or otherwise obtain" the data Plaintiff argues is a voiceprint. Second, Plaintiff consented to interacting with the Voice Agent in multiple ways. Third, Plaintiff has not shown McDonald's acted negligently, intentionally or recklessly because McDonald's had (and continues to have) a good faith basis to believe the Voice Agent was not collecting or capturing any voiceprint.

For any and all of these reasons, the undisputed facts mandate that this Court should grant summary judgment to McDonald's on Plaintiff's claims.

1

## I. BACKGROUND FACTS

Plaintiff alleges that he "had his voiceprint biometrics collected when he visited a McDonald's located in Lombard, Illinois in early 2020 and interacted with Defendant's AI voice assistant." ECF 1-1 at ¶ 23. Plaintiff moved to remand his Section 15(a) and Section 15(c) claims. On January 13, 2022, this Court dismissed Plaintiff's Section 15(d) claims. ECF 32. As such, only the 15(b) claim is pending before this Court. *Id.*

Plaintiff says he interacted with the technology for automating orders at the drive-thru ("Voice Agent") in December 2020, in March 2021, and again in December 2021. SOF ¶ 5. Each interaction occurred at the McDonald's location at 300 E. Roosevelt Rd., in Lombard, Illinois. SOF ¶ 6. Plaintiff is a McDonald's Global Mobile App ("mobile app") user and testified that it is possible he used the mobile app to redeem a deal or reward during the specified transactions. SOF ¶ 11.

The Voice Agent automates the order taking process. SOF ¶ 13. The interaction begins when the Voice Agent greets a customer at the drive-thru. SOF ¶ 17. As the customer speaks, the Voice Agent converts the customer's speech into text representing phonetic sound sequences ("phonemes"). SOF ¶ 17. The Voice Agent next processes the phonemes to determine the items from the menu that the customer intended to order. SOF ¶ 17. The phoneme sequence is directly mapped to the menu items. SOF ¶¶ 17, 31. Once the mapping from recognized phoneme sequence to menu item(s) is completed, the menu items are sent to the restaurant operations systems to fulfill the order. SOF ¶ 17. The Voice Agent does not obtain any financial information from the speaker—payment for the order is handled separately. SOF ¶ 32.



As confirmed by the log files and other record evidence, the Voice Agent does not attempt to identify the speaker, the driver, or any biometric trait regarding the individual. SOF ¶¶ 25-28, 40-41. In fact, the Voice Agent simply uses a statistical model to predict the

---

[1] Green highlighting was added to the screenshots in this brief to identify the portions referenced.

[2] Kaldi is an open source software toolkit for speech recognition. SOF ¶ 18.

phoneme/word sequence produced in order to recognize the menu items ordered by the speaker. SOF ¶¶ 38, 40. No speaker recognition is performed. SOF ¶¶ 25-28, 40-41. No analysis or prediction of speaker identifying information (e.g., age, gender) is performed in the process. SOF ¶ 25-29, 41.

The Voice Agent at issue here is incapable of performing speaker recognition. SOF ¶¶ 25-28, 40-41. The Voice Agent was specifically designed for and performs only speech recognition; for example, "if it heard a series of sounds that it interpreted to mean I would like a hamburger[,]" those sounds would be "translated to one hamburger being added to the order[.]" SOF ¶ 16. Stated simply, the Voice Agent is a speech content-focused system—it is focused on "what" was said not "who" said it.

## II.     ARGUMENT

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In response to a motion for summary judgment, therefore, "the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(e)). Indeed, "[s]ummary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*,

3 F.4th 927, 938 (7th Cir. 2021) (citing *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks and citation omitted)).

### A.     Carpenter Has Not Met His Burden of Showing a "Voiceprint."

BIPA regulates the collection of "biometric identifiers" and "biometric information." 740 ILCS § 14/15. Instead of generally defining "biometric identifier," BIPA lists the six specific identifiers that count: "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." *Id.* § 14/10. BIPA's text and intent establish that a voiceprint, like the other identifiers listed in the definition of "biometric identifier," must identify a person. "'Biometric information'" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. *Id.* So, in order to have biometric information, first there must be a biometric identifier and second, the information based on that identifier also must be used to identify. *Rivera v. Google, Inc.*, 238 F. Supp. 3d 1088, 1097 (N.D. Ill. 2017) (stating there is a "meaningful distinction between identifiers and information (one being the set of biometric measurements, the other being a conversion of those measurements into a different, useable form)").

There are multiple indicia that the legislature intended to regulate only voice data that identifies individuals. For example, the statute has the word "voiceprint" in the definition of "biometric *identifier*." 740 ILCS § 14/10 (emphasis added). That is, the term itself explains that it is an identifier. And in defining "biometric identifier" BIPA provides "the complete set of specific qualifying biometric identifiers," (*Rivera*, 238 F. Supp. 3d at 1094) – ***each of which is an identification method***. In defining "voiceprint" the Court must consider the other terms in the definition. *State Auto. Mut. Ins. Co. v. Tony's Finer Foods Enters., Inc.*, 589 F. Supp. 3d 919, 927 (N.D. Ill. 2022) ("When there is a list, the individual components of the list should be read

5

together. That is, the collection of words helps to inform the meaning of any individual word.") (internal citations omitted).

Furthermore, defining "voiceprint" as an identifier fulfills the purpose of the statute, which was enacted to address the risk of identity theft that might occur when an individual's biometrics are compromised. 740 ILCS § 14/5(c). As the statute explains:

> Biometrics are unlike other unique *identifiers* that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

*Id.* (emphasis added).

The statute was designed to encourage biometric facilitated transactions by regulating the collection of biometric identifiers. *Id.* For these reasons, in Section 15(e)(2), BIPA requires private entities to "store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *Id.* § 14/15(e)(2). In Section 10, BIPA defines "confidential and sensitive information" as "personal information that can be used to uniquely identify an individual or an individual's account or property." *Id.* § 14/10. *See People v. Casler*, 2020 IL 125117, ¶ 24, N.E.3d 767, 774 (courts "must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation").

The Illinois Supreme Court has recognized that BIPA protects a "secrecy interest" that is personal and unique to the individual whose biometrics are collected. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 46, 183 N.E.3d 47, 58; *see also Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206. Other courts have

6

explained: "The bottom line is that a 'biometric identifier' … is a set of measurements of a specified physical component (eye, finger, voice, hand, face) *used to identify a person*." *Rivera*, 238 F. Supp. 3d at 1096 (emphasis added). It is this hallmark of identification that distinguishes a "voiceprint" under BIPA from other voice related data. *See McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 716 (S.D. Ill. 2020) ("Voiceprinting, also known as voice biometrics, is the use of biological characteristics—one's voice—to verify an individual's identity without requiring the use of a passcode or answers to secret questions."); *Rivera*, 238 F. Supp. 3d at 1097 (no violation of the Act where "someone, say a journalist, who records a person's voice without generating a voiceprint.").

The term "voiceprint" is not defined by the statute. 740 ILCS § 14/10. When a statute does not define a term, courts rely on a dictionary, often Black's Law Dictionary, to determine the term's meaning. *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 26 ("When the statute contains undefined terms, we may use the aid of a dictionary to ascertain the plain and ordinary meaning of those terms." (citing *People v. McChriston*, 2014 IL 115310, ¶ 15, 4 N.E.3d 29, 33)); *Rosenbach*, 2019 IL 123186, ¶ 32 (court "may consult [standard definitions] when attempting to ascertain the plain and ordinary meaning of a statutory term . . . [that] has not been specifically defined by the legislature"). "Voiceprint" is defined as "[a] distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker." *Voiceprint*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Office of the Attorney General, in Binding Opinion 14-008, interpreted the term "voiceprint" in the same way. In 2017, the Attorney General stated that a "voiceprint" under BIPA is a "record of mechanical measurement" that "identif[ies] an individual speaker." *See* Public Access Opinion No. 17-011, Ill. Off. of Att'y Gen., 2017 WL 10084298, at *3 (Aug. 14,

7

2017) (quoting Black's Law Dictionary for definition of "voiceprint").

The undisputed record evidence, including expert testimony on the Voice Agent software, sworn testimony from McDonald's Corporation, and operational documents, confirms McDonald's did not collect Plaintiff's voiceprint under any of these definitions. SOF ¶¶ 13-33.

> 1. **The Voice Agent Operates As A *Speech* Recognition System, Not A *Speaker* Recognition System.**

The Voice Agent automates the order taking process and operates as a speech recognition system, not a speaker identification or recognition system. SOF ¶¶ 13-33. *C.f. Rivera*, 238 F. Supp. 3d at 1096 (stating biometric identifiers are "a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person"). The Voice Agent greets a customer at the drive-thru. SOF ¶ 17. As the customer speaks, the Voice Agent captures the speech signal and converts the speech to produce an output into phonetic sound sequences, which are then used to determine the items from the menu that the customer intended to order. SOF ¶¶ 17, 31. Once the mapping from recognized phoneme sequence to menu item(s) is completed, the menu items are sent to the restaurant operations systems to fulfill the order. SOF ¶ 17. For example, when a customer orders a cheeseburger, the Voice Agent recognizes the content of the speech by "convert[ing] that audio to phonemes, phonemes to intent, in this case add a cheeseburger to the order, and then . . . interact[ing] with other systems to complete that order." SOF ¶ 15. The Voice Agent does not identify anyone and in fact, no software, algorithms, or models exist within the Voice Agent that could possibly be used to perform speaker recognition or any voice biometric speaker assessment. SOF ¶¶ 14, 25-28, 40-41.

Indeed, Plaintiff concedes the Voice Agent did not ask for his name, birthdate or any identifying information. SOF ¶ 8. He similarly concedes the Voice Agent did not say anything that led him to believe that it knew who Plaintiff was. SOF ¶ 8. Notably, Plaintiff has not

8

identified his alleged biometric identifier or biometric information among the discovery produced in this case. What's more, Plaintiff's expert did not identify any individual (including Plaintiff) that spoke to the Voice Agent and concluded that the Voice Agent "did not perform speaker recognition." SOF ¶ 28.

        2.      **The Voice Agent Does Not Produce "A Distinctive Pattern Of Curved Lines And Whorls . . . For The Purpose Of Identifying An Individual Speaker."**

The record evidence shows that the Voice Agent does not produce a "pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker." SOF ¶ 25; *Voiceprint*, Black's Law Dictionary (11th ed. 2019). The process by which the Voice Agent produces the transcription of phonemes is not in dispute. SOF ¶¶ 17-23. This process does not involve the creation of any pattern of curved lines and whorls and there is no evidence in the record reflecting otherwise. SOF ¶¶ 17-23. Nor is the process for the purpose of identifying an individual speaker. SOF ¶¶ 25-28, 40-41. The session logs that are created for every Voice Agent interaction record its key processes from the point audio is received to when the contents of the order are transferred for fulfillment. SOF ¶¶ 34-37. The logs do not show "any attempt to identify the speaker, the driver, or any biometric trait regarding the individual. ███████████████████████████████████████ ████████████████████████████████████████████████ There is no algorithmic processing which performs speaker recognition." SOF ¶ 40.

        3.      **The Voice Agent Does Not Produce An Equivalent To A Voiceprint.**

To the extent Plaintiff claims mel-frequency cepstral coefficients ("MFCCs") are the "equivalent" of a voiceprint, that assertion is belied by the record and law. Expert witnesses for both sides agree that MFCCs are simply a mathematical representation of information in the

voice signal (the sound produced by a speaker). SOF ¶ 19. *See McGoveran v. Amazon Web Servs., Inc.*, No. 1:20-CV-01399-SB, 2023 WL 2683553, at *10 (D. Del. Mar. 29, 2023) ("under the Act's terms, voice audio alone is neither a biometric identifier (a voiceprint) nor biometric information (information derived from a voiceprint)."); *Rivera*, 238 F. Supp. 3d at 1097 ("[I]f Google simply captured and stored the *photographs* and did not measure and generate scans of face geometry, then there would be no violation of the Act. (The same is true of someone[] . . . who records a person's voice without generating a voiceprint.)" (emphasis in original)).

Plaintiff may argue that MFCCs *can be used* for identity verification purposes. However, the Voice Agent does not use MFCCs to perform identity verification or speaker recognition. SOF ¶¶ 25-31. Moreover, the Voice Agent cannot use MFCCs to perform identity verification. SOF ¶¶ 25-31. It was not designed for that purpose. SOF ¶¶ 14, 25-31. To identify a speaker, a system would need (1) a software engine designed for that purpose, (2) an acoustic model to represent the known speaker's physical production of each phoneme, and (3) a sufficient temporal sequence of "MFCC features" for the engine to effectively perform the operation. SOF ¶¶ 26-27. As both experts agree, these are not all present in the Voice Agent. SOF ¶ 27. ███

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████ McDonald's did not have the capability to identify the individual that spoke to the Voice Agent, at the time the order was placed or at some future time, and thus, cannot be said to have obtained a voiceprint under BIPA. SOF ¶¶ 13-33.

**B.     Carpenter Has Not Met His Burden of Showing a Voiceprint Was Captured or Collected.**

The Illinois Supreme Court recently turned to Webster's Third New International

Dictionary 444 (1993) to interpret "collect" and "capture" in Section 15(b). *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 23. Specifically, the Court found that "Collect" means "to receive, gather, or exact from a number of persons or other sources" and "Capture" means "to take, seize, or catch." *Id.* As explained in *Barnett v. Apple*, capture means "to record in a permanent file (as in a computer)." *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 48 (Dec. 23, 2022). *Barnett* goes on to list the dictionary's examples of "capture's" use in a sentence: "The system is used to *capture* data…."; "Similarly,…the information is captured, or recorded in a permanent file, from an individual..." *Id.*(citing *Mosby v. Ingalls Mem'l Hosp.*, 2022 IL App (1st) 200822, ¶ 58) (emphasis in original). In addition to not meeting the definition of voiceprint, no data at issue in this case was captured or collected.

### 1. The Voice Agent Does Not Retain Any Speech Features Created During An Interaction.

The information McDonald's records during an interaction with the Voice Agent is not a voiceprint. SOF ¶ 33. ███████████████████████████████████ ███████████████████████████████████████████████Thus, the information "captured" or "collected" by McDonald's under the definitions set out in *Cothron* and *Barnett* is not a voiceprint.

To the extent Plaintiff argues that MFCCs are equivalent to a voiceprint (and as set forth above, they are not), the Voice Agent does not capture or collect them. The undisputed evidence shows the Voice Agent does not retain any acoustic speech features (e.g., MFCCs) used to produce the output phoneme text label sequence. SOF ¶ 31 ████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████to the extent Plaintiff argues

11

MFCCs are equivalent to a voiceprint, Plaintiff has failed to meet his burden of showing that McDonald's "captured" or "collected" the MFCCs.

> **2.      Plaintiff's Attempt To Combine Voice Agent Data With Other Sources Does Not Show McDonald's Captured, Collected or Otherwise Obtained a Voiceprint.**

Neither the Voice Agent session logs nor any other data McDonald's or any of its vendors have, alone or in combination, can identify Plaintiff or any other individuals as having interacted with the Voice Agent. SOF ¶¶ 34-58. Indeed, as this Court noted in granting McDonald's motion for protective order, even McDonald's third party payment processor cannot distinguish whether a transaction was made at the drive-thru (using the voice agent potentially) or in the restaurant. ECF No. 70. The session logs do not contain any customer identifying information. SOF ¶¶ 40-41. In discovery, Plaintiff requested from McDonald's information stored in four other databases that are completely separate from the Voice Agent or Voice Agent data in hopes that he could tie some data to the Voice Agent data to do what McDonald's does not – identify customers at the drive-thru:

- Point of sale (POS) transaction data known as ▮▮▮▮▮ is specific to a store and includes the transaction data for orders associated with the restaurant. These data contain no personally identifying information. SOF ¶¶ 42-47.

- Data McDonald's has from payment processing of transactions includes token data, which is not credit card data but anonymized data associated with the transaction. SOF ¶¶ 48-51.

- ▮▮▮▮▮ are numbers assigned to individuals who sign up for a McDonald's account on the mobile app. ▮▮▮▮▮ are not included in the Voice Agent session logs. SOF ¶¶ 52-54.

12

- Plaintiff also requested names and zip codes in the ███████████████ ██████ database that were provided by some mobile app users when they created an account. SOF ¶ 55-57. The ████ database contains no transaction history and access to it is restricted. SOF ¶¶ 55, 58.

These data, alone or in combination, cannot identify any individual, let alone Plaintiff, through any voice data associated with the Voice Agent. SOF ¶¶ 47, 50-51, 57-58. Plaintiff's attempt to use discovery to tie the Voice Agent data with other datasets in hopes of identifying customers not only fails but also highlights the deficiencies in his claims.

## C.      Plaintiff Consented to Interacting with the Voice Agent.

A violation of Section 15(b) of BIPA requires a lack of informed consent by the customer. Although McDonald's had no need to acquire such informed consent because it did not capture or collect biometric identifiers, Plaintiff consented to interacting with the Voice Agent. SOF ¶¶ 5-7, 12, 24.

Plaintiff consented to the Voice Agent in multiple ways. For one, McDonald's posted a notice about the Voice Agent in the drive thru, which stated: "Your experience in the drive thru may be audio and video recorded for service improvement and quality assurance purposes." SOF ¶ 24. In addition, as a mobile app user, Plaintiff was provided McDonald's Global Customer Privacy Statement, which expressly states that customer information is collected through automated methods, including "visits to our restaurants . . . recorded using digital technology (e.g. video recordings)[.]" SOF ¶ 12. And, Plaintiff testified that the very first time he interacted with the Voice Agent, he could tell it was an automated voice, but he did not leave the drive-thru and instead finished ordering because he wanted the food. SOF ¶¶ 5-7. Indeed, Plaintiff claims to have gone back to the location that had the Voice Agent at least three more

13

times, including in December 2021, *after* he filed this lawsuit. SOF ¶¶ 5, 10. *C.f. Gorny v. Wayfair, Inc.*, No. 18 C 8259, 2019 WL 2409595, at *6 (N.D. Ill. June 7, 2019) (finding enforceable contract when "evidence establishe[d] that [buyer] accessed Wayfair.com repeatedly and made purchases using forms that . . . expressly notified the buyer of the existence of terms that would govern the purchase.").

**D.      Plaintiff is Not Entitled to Statutory Damages Because He Has Not Shown That McDonald's Negligently, Intentionally, or Recklessly Violated BIPA.**

Under 740 ILCS § 14/20, statutory damages may be recovered only where the violation is negligent, intentional or reckless. Conversely, an entity can "avoid liability by taking reasonable steps toward compliance." *Rivera*, 238 F. Supp. 3d at 1104. Here, McDonald's had a good faith basis to believe the Voice Agent was not collecting or capturing any voiceprint. As previously noted, "voiceprint" is undefined by the statute. And by the plain and ordinary meaning of the term, the Voice Agent does not capture, collect or produce a "distinctive pattern of curved lines and whorls." SOF ¶ 25; *Tims*, 2023 IL 127801, ¶ 26 ("When the statute contains undefined terms, we may use the aid of a dictionary to ascertain the plain and ordinary meaning of those terms." (citing *McChriston*, 2014 IL 115310, ¶ 15)); *Voiceprint*, Black's Law Dictionary (11th ed. 2019) (defining voiceprint as "[a] distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker.").

Moreover, McDonald's took active steps to avoid collecting personally identifying data. First, ███████████████████████████████████████████████████████████████████ during the speech recognition process. SOF ¶ 21. Second, as Dr. Krock confirmed, the session logs and the voice signal were separated from ███ data, token data, and ███████, and, regardless, none of the data, individually or in combination, can identify individuals who

14

interacted with the Voice Agent. SOF ¶¶ 34-58. ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ SOF ¶

55. Because of the intentional design of the Voice Agent as a speech recognition system and the additional steps McDonald's took to ensure customers could not be identified even by *non-biometric* methods, Plaintiff cannot show McDonald's negligently violated the terms of BIPA and is thus subject to statutory damages.

Plaintiff has proffered no evidence of other "reasonable" steps McDonald's could have or should have taken to avoid collecting his biometric identifier. Accordingly, he cannot show that McDonald's acted negligently. *See* Ill. Pattern Jury Instr. 10.01 (describing "negligence" as "the failure to do something which a reasonably careful person who do, or the doing of something which a reasonably careful person would not, under circumstances similar to those shown by the evidence"). And he certainly cannot point to any evidence that McDonald's violated BIPA "intentionally" or "recklessly." *See Wells v. IFR Eng'g Co.*, 247 Ill. App. 3d 43, 46 (1993) (for "conduct to be intentional, a person must commit the act and he must also intend to produce the harm"; "reckless" conduct involves "commit[ing] an act" while "realiz[ing] there is a strong probability that harm might result").

## III.    CONCLUSION

Based on the foregoing, Defendant respectfully requests the Court grant its motion for summary judgment in its entirety.

15

Dated: April 17, 2023

Respectfully submitted,


By: */s/ Michael Gray*

      Michael J. Gray,
      mjgray@jonesday.com
      Efrat R. Schulman
      eschulman@jonesday.com
      Thomas Ritchie
      tritchie@jonesday.com
      Elsa Andrianifahanana
      eandrianifahanana@jonesday.com

      JONES DAY
      110 North Wacker Drive
      Suite 4800
      Chicago, IL 60606
      Telephone:    +1.312.782.3939
      Facsimile:    +1.312.782.8585

      *Attorneys for Defendant*

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, a true and accurate copy of the foregoing was filed via the Court's CM/ECF document filing system, which will provide notice to the counsel of record.

/s/ Michael Gray
Counsel for McDonald's Corporation